**FILED**

UNITED STATE DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA 09 FEB 17 PM 3: 27
ORLANDO DIVISION

U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

MARGARET C. "DIAN" COUNSELLER
and MARVIN L. COUNSELLER,
    Plaintiffs,

vs.                             Case No. 6:09-cv-305-ORL-35KRS

HARSH MANCHANDA,
MAC (USA) TRADE, INC., a Florida corporation,
EAST PALM RESORT CONDOMINIUM
ASSOCIATION, a Florida non-profit corporation,
and HOLIDAYS IN RESORT, INC.,
a Florida corporation.
    Defendants.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, Margaret C. "Dian" Counseller ("Plaintiff Dian Counseller") and

Marvin L. Counseller ("Plaintiff Marvin Counseller"), sue Defendants, Harsh

Manchanda ("Defendant Manchanda"), Mac (USA) Trade, Inc., a Florida

corporation, ("Defendant Mac"), East Palm Resort Condominium Association, a

Florida non-profit corporation ("Defendant East Palm"), and Holidays In Resort, a

Florida corporation ("Defendant Holidays"), and say:

    1.    This is an action for unpaid overtime under the Fair Labor

Standards Act, as amended, 29 U.S.C. §201, et seq. ("the FLSA").

    2.    The Court has subject matter jurisdiction of this action pursuant to

28 U.S.C. §1331 (federal question jurisdiction) and 29 U.S.C. § 216(b) (FLSA).

    3.    Plaintiffs are residents of Osceola County, Florida, and are

husband and wife.

    4.    Defendant Manchanda is a resident of Osceola County, Florida.

12.     As a result, Defendant Manchanda offered to employ Plaintiff Dian Counseller as a housekeeper at minimum wage, from which would be deducted any amounts due for rent (including taxes, telephone charges, and an additional charge for keeping a pet).

13.     Plaintiff Dian Counseller accepted this arrangement and began working for minimum wage for less than 40 hours per week.

14.     For the initial several weeks, Plaintiff Dian Counseller received a personal check from Defendant Manchanda, which she then took to the front desk and endorsed to Defendant Mac, with the entire amount thus being credited to her balance due for rent.

15.     In April 2004 Defendant Manchanda stopped writing checks and began just crediting the amount of Plaintiff Dian Counseller's pay directly to Plaintiffs' rent. Thus, for the initial several months of Plaintiff Dian Counseller's employment, she received no payment for her labor.

16.     In December 2004, Plaintiff Dian Counseller was "promoted' to "executive housekeeper", and thereafter nominally paid $230.00 per week ($460.00 per bi-weekly pay period). Room rent was also increased around this time to approximately $237.00 per week, which included $30.00 per day ($210.00 per week) for rent plus taxes, telephone charges, and an additional charge for keeping a pet. For this she was expected to work her "regular" work week of 6 eight-hour days, plus to be on call 24 hours per day, seven days per week, as a result of which she frequently was unable to sleep for five or more hours uninterrupted.

3

17.    Plaintiff Dian Counseller was "suspended" on November 25, 2005 (the day after Thanksgiving), ostensibly for accepting a $3.00 tip to clean a room and then failing to clean it, which accusation was false in any event.  The suspension continued to December 26, 2005, during which time her room charges continued to accrue.

18.    On December 26, 2005, Plaintiff Dian Counseller was called back to work as a housekeeper (no longer "executive" housekeeper), and her pay was then minimum wage multiplied the actual number of hours worked.  However, again she received no pay in any form - paycheck, personal check, cash, or otherwise - and instead her pay was deducted from her outstanding room charge balance.

19.    In April 2006, Plaintiff Dian Counseller was again "promoted" to "executive housekeeper", at the rate of pay of $225.00 per week ($450.00 bi-weekly).  After this time, she was again required to work a "regular" 48 hour week, plus be on-call "24/7", as a result of which she frequently was unable to sleep for five or more hours uninterrupted.

20.    In July 2007, Defendants began paying Plaintiff Dian Counseller an additional $25.00 per week in cash, bringing her total compensation to $225 per week ($500.00 bi-weekly).

21.    In August 2007, for the first time, Defendants put Plaintiff Dian Counseller on the payroll, through an outside payroll service, at $50.00 per week. At the same time, Defendants took her room "off the system" so there was no bill generated, but continued to keep an account of the amounts owed for the room

4

and, ostensibly, credit the same amount, $450.00 bi-weekly, against that

account.  This brought Plaintiff Dian Counseller's total compensation to $275.00

per week ($550.00 bi-weekly), regardless of hours actually worked.  Of course,

because the $50.00 per week was being paid through the payroll service,

Defendants also had to, and did, fraudulently misrepresent to the payroll service

(and thereby the relevant agencies of the State of Florida and the United States)

the amount of hours worked in order to arrive at the $50.00 figure.

22.    Prior to this time, Plaintiff Dian Counseller had been required to

work "off the books," so that, during such period: Defendant had neither deducted

nor paid on Plaintiff Dian Counseller's account any income taxes, social security

or Medicare taxes; Defendants had neither deducted nor paid on Plaintiff Dian

Counseller's account any amounts for unemployment compensation taxes; and

Defendants had not reported Plaintiff Dian Counseller to its worker's

compensation insurer as an employee for purposes of worker's compensation

insurance.  The foregoing conduct constitutes multiple, repeated violations of

numerous laws and regulations, administrative, civil and criminal.

23.    On or about April 15, 2008, Plaintiff Dian Counseller was again laid

off for a month, during which time her room charges accrued.  During this time

Defendant Manchanda also frequently called Plaintiff Dian Counseller and

assured her she would eventually be back in charge of housekeeping, and

solicited her opinions and advice on various matters, such as the decoration of

the condominium units.

24.    On or about May 15, 2008, Plaintiff Dian Counseller was again "re-hired" as "executive housekeeper."  At this time her room was left "on the system", and her pay went back to just the $225.00 per week ($450.00 bi-weekly) deducted from her room charges.  However, it was during this period that Defendant Manchanda became very secretive and refused to show Plaintiffs the account for their room.  Accordingly, Plaintiffs are unsure how much has been credited.  To their knowledge, Defendants may still claim an outstanding balance, although Defendants have not yet made any such assertion.

25.    Defendants subjected Plaintiff Marvin Counseller to the same practices.  Throughout the applicable time period, while Plaintiff Marvin Counseller had intermittent employment off of Defendants' premises, he was likewise often unemployed and, with his wife, in severe financial straits.  As a result, and in order to avoid homelessness, on three occasions Plaintiff Marvin Counseller also worked for Defendants.

26.    Beginning August 2006, Plaintiff Marvin Counseller was employed as a security guard at the rate of $50.00 per week ($100.00 bi-weekly).  This entire amount was applied to existing room rent arrearage.  Once the arrearage was paid down to $0.00, several months later, Plaintiff Marvin Counseller was laid off.  During this period Plaintiff Marvin Counseller's "regular" work week was 6 eight-hour days, but, like his wife, he was also required to be on-call and available 24 hours per day, seven days per week, and regularly had less than 5 hours of continuous sleep in a night due to work duties.

27.    From August 2007–March 2008, Plaintiff Marvin Counseller was again employed by Defendants, first to do maintenance, grounds-keeping, and similar miscellaneous duties, for which he was paid $50.00 per week in cash, and then to be a night auditor and pick up trash, for which he was promised $125.00 per week, in cash, but was actually paid $100.00 per week. His work hours were the same as before.

28.    From June 2008-December 19, 2008, Plaintiff Marvin Counseller was again employed as a housekeeper, at the rate of $50.00 per week, plus an up-front payment of $545.00 (representing the amount "owed" to him for the $25.00 per week shortage in pay from the preceding period of work) to get his drum set out of a pawn shop.

29.    Plaintiffs were both laid off as of December 19, 2008, albeit with an assurance that they would be rehired around the beginning of the year, "on the payroll" (meaning they'd be put on the payroll with the payroll service through which the dozen or so non-residential employees were paid, which would probably require they be paid at least minimum wage) but they'd have to move out of their room before that time. This was connected to Defendants' having, ostensibly, signed a contract with a new franchisor, Choice/Econo Lodge. Defendants had lost their franchise with Howard Johnson's in 2005, then established and lost another franchise relationship, October 2005 – June 2006, with America's Best Value.

30.     In the midst of the foregoing, on or about April 10, 2006, Defendant Manchanda caused to be formed Defendant East Palm, and thereafter, on or about February 9, 2007, recorded a declaration of condominium converting some or all of the Premises to a condominium.  Following that time, to all appearances Defendants have continued to operate the Premises as a motel, and there is as of the date of filing this action no deed conveying any unit of such condominium appearing in the public records of Osceola County indexed and accessible on-line.

31.     Throughout Plaintiffs' employment, Defendant Manchanda frequently exhibited consciousness of duties under, and non-compliance with, multiple laws and regulations, and actively took efforts to conceal such non-compliance, including the knowing, willful, and intentional refusal to maintain virtually any records, including records relating to Plaintiffs' employment.

32.     At all material times, Plaintiffs were directly subject to the  direction, supervision and control of Defendant Manchanda, at all times acting within the scope of his capacity as owner, principal, officer, director, managing agent, and agent, of Defendants Mac and East Palm.

33.     At all times material hereto, Defendant Manchanda was the sole individual responsible for handling Plaintiffs' pay.  Except as expressly noted above, all payments to Plaintiff, by cash or check, were made directly by Defendant Manchanda.

34.    At all material times the separate corporate personalities of Defendants Mac and East Palm were completely disregarded.  At all material times, Defendant Manchanda commingled and confused his personal interests, capacities and roles, with his interests, capacities and roles with Defendants Mac and East Palm, and likewise commingled and confused the operations, funds, books, records, ownership interests, and authority of Defendants Mac and East Palm, including with respect to labor and personnel matters, such that the separate corporate existence of any or all the corporate Defendants should be disregarded, and Plaintiff should be deemed to have been employed by each and every one of the Defendants Manchanda, Mac, and East Palm, collectively, jointly, and severally, on the following grounds, pled in the alternative:

a.    Single Integrated Enterprise.  Defendants constitute a single integrated enterprise by virtue of the interrelation of operations, common control of operations, including labor and employment matters, common management, and common ownership and financial control.

b.    Joint Employment.  Defendants, or two or more of them, jointly employed Plaintiff, on the grounds that Plaintiff's work simultaneously benefited two or more of such Defendants; or there was an arrangement between or among two or more such Defendants to share the services of employees or interchange employees; or one or more of such Defendants was acting directly or indirectly in the interest of one or more of the other Defendants in relation to Plaintiff, or two or more of such Defendants are associated and should be deemed to share control of the employees, directly or indirectly, because one or

9

more such Defendants controls, is controlled by, or is under common control with one or more other Defendants.

c.    Joint Venture.  Two or more or all Defendants formed a joint venture, on the grounds that there was a community of interest in the performance of a common purpose, joint control or right of control, a joint proprietary interest in the subject matter, a right to share in the profits and a duty to share in any losses which may be sustained, and, as a result, the illegal and tortious acts set forth in this Complaint were committed by individuals who, while nominally employees or agents of one Defendant, were in fact agents or employees of two or more such Defendants and were acting within the course and scope of such agency at all material times.

d.    Agency.  One or more of Defendants was the agent of one or more of the other such Defendants or their officers, directors, principals, owners, or managing agents, on the grounds that (i) such principal or principals have acknowledged, implicitly or explicitly, by word or by deed, that the agent or agents will act for it or them, (ii) the agent or agents, implicitly or explicitly, by word or by deed, have accepted the undertaking, and (iii) the principal or principals have the power, in law or in fact or both, to exercise control over the actions of the agent, so that the illegal and tortious acts set forth in this Complaint were committed by individuals who, while nominally employees or agents of one Defendant, were in fact agents or employees of two or more such Defendants and were acting within the course and scope of such agency or employment at all material times.

e.      Alter Ego/Piercing the Corporate Veil.  The independent corporate existence of the corporate Defendants named in this complaint should be disregarded, on the grounds that they have no de facto independent existence in fact and are used as the alter ego or mere instrumentality of the stockholder or of each other, and were formed or are being used for an improper purpose, or for wrongdoing, fraud or improper conduct.

35.     Successor liability of Defendant Holidays.  On or about January 1, 2009, Defendant Holidays was formed to continue the business of Defendant Mac with the new franchisor.   Defendant Holidays is therefore liable as a successor to Defendants Manchanda and Mac for the liabilities asserted herein.

36.     At all material times, Defendant Manchanda was an employer as defined by the FLSA, in that he was Plaintiffs' employer, or was acting directly or indirectly in the interest of an employer an in relation to the employer's employees, including Plaintiffs.

37.     At all material times while employed by Defendants, Plaintiffs were engaged in commerce as defined in the FLSA.

38.     At all material times, Defendants, each of them severally, or all of them collectively, were an enterprise engaged in commerce as defined in the FLSA, in that Defendants were engaged in related activities for a common business purpose through unified operation or common control, had employees engaged in commerce or in the production of goods for commerce, or had employees handling, selling, or otherwise working on goods or materials that

11

have been moved in or produced for commerce, and had annual gross volume of sales made or business done not less $500,000.00.

39.    As stated above, Plaintiffs were at all material times paid equal to or less than minimum wage. Accordingly, their "regular wage rate" for calculating overtime compensation was the applicable minimum wage for any given time period.[1]

40.    Effective May 1, 2005, the State of Florida passed the Florida Minimum Wage Amendment, Article X, §24, Florida Constitution (the "FMWA"), prescribing a higher minimum wage. Accordingly, for the three years preceding filing of Plaintiffs' complaint the applicable minimum wage rate, and resulting overtime rates, are as follows:

| Time period (statutory basis) | Min. wage rate | Overtime rate |
|---|---|---|
| 1/1/06-12/31//06 (FMWA) | $6.40 | $ 9.60 |
| 1/1/07-12/31/07 (FMWA) | $6.67 | $10.01 |
| 1/1/08-12/31/08 (FMWA) | $6.79 | $10.19 |

41.    During the time Plaintiffs were employed by Defendants, she was suffered or permitted to work over 40 hours per week during all or almost all the weeks she worked for Defendants

42.    Defendants have willfully violated the FLSA, in that Defendants have willfully failed to pay overtime compensation to Plaintiffs.

---

[1] Plaintiffs intend to seek leave to amend her complaint to allege a claim for unpaid minimum wages pursuant to the FMWA upon the running of the 15-day notice period provided for in Section 448.110( ), Florida Statutes.

43.    Pursuant to the FLSA, Plaintiffs are entitled to recover unpaid overtime compensation in an amount equal to one and one-half times their regular rate of compensation, plus an additional amount equal thereto as liquidated damages.

44.    Pursuant to the FLSA, Plaintiffs are entitled to recover costs and reasonable attorney's fees.  Plaintiffs have retained the undersigned attorney and are obligated to pay him a reasonable attorney's fee.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly and severally, for unpaid overtime compensation, plus an amount equal thereto as liquidated damages, costs, reasonable attorney's fees, and such other relief as the Court deems just and proper.

PLAINTIFFS DEMAND TRIAL BY JURY AS TO ALL ISSUES.


Dated: February 12, 2009

Jesse L. Skipper
Fla. Bar No. 0784990
Jesse L. Skipper, P.A.
695 Central Avenue
St. Petersburg, FL 33701
Tel:  (727) 896-8781
Fax: (727) 823-6792

13